Good morning, Your Honors. May it please the Court, Jeffrey Cunningham for Appellant Orly Tate, who is present at Council Table, and also arguing today for co-appellant, Defend Our Freedoms Foundation. How will you allot your time? You have a total of 15 minutes between you, including rebuttal, by the way. Yes, I will be presenting the argument in its entirety, and I'd like to reserve five minutes for rebuttal. Just watch the clock as it counts down. I will. Thank you. Thank you. I'd like to first address the issue raised in the February 1st order regarding potential mootness of the appeal. The appeal is not moot, despite the filing, or is not made moot because of the filing of plaintiff's amended complaint, and let me explain the reasons for that. The key to understanding this issue is to examine exactly what the district court did on the anti-slap motion. If the court had deemed the anti-slap motion to be moot, and had granted plaintiff's motion for leave to amend, and then allowed defendants to file an anti-slap motion challenging the amended complaint, under that scenario, this appeal might be moot because that order would be truly interlocutory. It would be leaving the issue of whether the anti-slap statute applies in the case to be determined on a later anti-slap motion, and that is what the district court intended to do in the tentative order, but in the final order, the district court did the opposite. It ruled on the merits of the anti-slap motion, including to determine whether or not the statute applies in the case. It also denied defendants the right to bring an anti-slap motion challenging the amended complaint. That last statement, where was that? I didn't see anything like that in the order. Yes, it's in the excerpts, Your Honor. Which order are you speaking of? It's in the excerpts, Your Honor, volume 2, page 369. What order is that? Carry all the excerpts with me. Yes, that is the order by which Judge Guilford denied defendants the right to bring an anti-slap motion challenging the amended complaint. I did read that or read something like that, and the impression that I got was he's saying, well, this thing's before the Ninth Circuit, it's really not for me to speak to it. I didn't see that he was saying that the question is forever barred, and frankly, he wouldn't have been wrong in saying what he said, because how could he speak to the anti-slap motion since he brought the appeal from the previous denial? How does that – I don't know how that constitutes a ruling on the merits by Judge Guilford that there could be or denying an anti-slap motion with regard to the amended complaint. Well, as we read that order and the order denying the anti-slap motion, Judge Guilford's intent in making those orders – You're teasing out of something, out of what he said, something that's not there. I mean, lawyers try to do this all the time. That's not what he said. Now you're trying to read his intent? No, Your Honor. Something that's not there? It's clear from the orders before the court. You ought to read the Supreme Court has said any time a lawyer says it's not clear, that means it isn't, so be careful. The orders clearly state the district court's intent to state the final word on whether the anti-slap statute applies in this case. And the order – the related order denying the request to file an anti-slap motion challenging the amended complaint does not state anything like, after this appeal is resolved – What does it say? Go ahead and read it to us. I can, Your Honor. That order states in part – well, it states, I think, in the entirety, quote, the court has already ruled on an anti-slap motion regarding the initial complaint and defendant has appealed that ruling. And that's in the excerpts, volume 2, page 369. It does not say that after resolution of this appeal, if defendants request leave to file an anti-slap motion challenging the amended complaint, that the court would entertain that request. But you're also dealing with the prior paragraph that says the court grants the request to leave to file a motion to dismiss the first amended complaint. Correct. Correct. A separate issue from the anti-slap motion. I'm only addressing the anti-slap motion. The right under the Verizon and Vest and similar cases for a defendant to bring an anti-slap motion challenging an amended complaint. But the point is that the original complaint is a nullity. The first amended complaint is the only complaint that was before the judge at that point. Isn't that correct? We don't see it that way. And let me discuss the Pack Bell case to make that point.  That case involved a motion to dismiss the initial complaint. There was an appeal filed. In the meantime, the plaintiffs were allowed to file an amended complaint. The Supreme Court held that that appeal was not moot despite the filing of the amended complaint. It determined that some of the claims for relief of the initial complaint were legally insufficient and dismissed those claims. And then remanded the case to the district court to consider whether the amended complaint or claims of the amended complaint should be dismissed. So under the Pack Bell case, as it applies here, this appeal is not moot. And this court, it is still proper for this court to consider the merits of the anti-slap motion addressed to the initial complaint. If I could, the other case cited in the February 1st order, the Grand Canyon Trust case, really does not apply here. That was the case brought under the Endangered Species Act based in part on 2009 and 2010 environmental studies. In the meantime, a 2011 study was issued but was not sued upon. And the Court of Appeal in the Grand Canyon case held that not that the appeal was moot, but that the claims for relief based on the then obsolete earlier biological opinions, that those claims were moot. Not that the appeal as a whole was moot, that the appeal on the whole was moot, simply certain claims. So we submit that this court, like the Supreme Court in the Pack Bell case, can still consider the merits of the appeal, whether the anti-slap motion applied to the initial complaint, whether plaintiffs met their burden on that motion. And at the very least, under the Verizon and Vest cases, we submit that the appeal is also not moot because this court, that the district court under those cases, was required to allow defendants to bring an anti-slap motion challenging the amended complaint. And at the very least, relief can be given by this court directing the district court to do that. If I could, I'd like to move on to the substantive issues in the appeal. Proceed. We demonstrated, defendants demonstrated, that the alleged acts, the acts alleged in the initial complaint, come within the anti-slap statute, and they specifically come within Now, are we talking about the initial complaint or the First Amendment amended at this point? The initial complaint, because we were not given the opportunity, our legal right, to challenge the amended complaint by anti-slap motion. Well, what's the status of the initial complaint? Hasn't it been superseded by the First Amendment? Not, not for, no. Our argument is, Your Honor, not for purposes of this appeal, and I cited to you the Pack Bell case, and also the Verizon and the Vest cases as supporting that argument. So the, the substantive argument regarding the anti-slap motion concerns the initial complaint. And we submit that we more than met our burden to show that the alleged acts come within the anti-slap statute. They come within each of the four categories of protected activity enumerated in its California Civil Counsel, just help me figure this out. This is a rather unusual situation. If we were to grant your appeal on the merits, what happens next? If, if this court reverses the district court's order and instructs the district court, directs the district court to dismiss the case on anti-slap grounds as to these defendants, that would be the end of the case as against these defendants. Which case, the first complaint or the second complaint? The, the, the first complaint. But that would be, that would also take care of the amended complaint. It would dismiss the case as to Ms. Tate's and defend our freedoms. But the first amendment, amended complaint, that's the second complaint filed, is still there. It's still, it's still pending before the district court, is it not? It is. But if we analogize this or apply the Pack Bell case, in that case, the Supreme Court, despite the filing of an amended complaint, addressed the merits of the motion to dismiss directed to the initial complaint and found that some of the claims of the initial complaint were insufficient and dismissed those claims. It did not find that all of the claims of the initial complaint were insufficient. And so then it remanded the case back to the district court. With orders to what? Dismiss the whole thing? No. With, under the circumstances of that case, the Pack Bell case, no, because the Supreme Court did not find that there were sufficient grounds to dismiss all claims. But the Supreme Court did consider whether it could do that. It just wasn't able to do that in that particular case. Counsel, you're down to a minute and a half if you want to reserve or if you continue to use it, whatever you like. I'll let you use the remaining minute and a half and then use my remaining five minutes. What remaining five minutes? Your clock was your total time. I'd like, I'm sorry, I'd like to reserve my remaining time. Yes, you have a minute and 17 seconds left of your total 15 minutes. Thank you. Very well. Counsel? Good morning, Your Honors. Philip J. Berg, Pennsylvania attorney at ProHop Vichy in California. I'm a plaintiff in this case and I'm also counsel in this case. Your Honors, there's three issues to deal with in this case. One is the order of this honorable court on February 1st. The second is the merits of the case if we don't deal, if that order is not correct, which I believe it is. And the third is an issue of sanctions here that has been sent to this panel, I believe, by the actions of the defense counsel that is here today. The first is the order of February 1st. I think it's, in the line of cases, it's proper. Your order is proper. I think there's no question this case is moot. They're coming up with some kind of, I couldn't even follow the line here. They're basically saying that the First Amendment complaint is there, but we're only dealing with the original complaint. Well, the original complaint's moot. And there was plenty of time in there. I mean, the court denied the anti-SLAPP and granted a plaintiff's leave to amend on June 14th. On June 17th, three days later, we filed a First Amendment complaint. That's the only complaint before that court and, I believe, this court. And it's still pending, is it not, in front of the district court? That's correct. It's on stay right now because of this appeal. So, really, nothing's going on until this appeal is. So your position is the original complaint, you said moot, it's no longer operative. It's a nullity, right? It's not. I mean, even the judge's order. The district court denied their anti-SLAPP and granted plaintiff's leave to amend. We amended. We amended June 17th. On June 27th, 10 days later, the appellant, Defend Our Freedoms, filed an appeal, and Orlie Tates didn't file her appeal until July 13th. So if you want to count the 30 days, you know, on there, it would be in effect if we had not filed that First Amendment complaint. Mr. Berg, what's your response to the Pack Bell case? It's funny, I've spent quite a lot of time discussing Pack Bell. I just think that they're trying to come up with any kind of statement here. I think the burden is, as of three days later, there's a First Amendment complaint. Their rights weren't denied. They could have appealed that, but they didn't. They appealed. Well, what could they have appealed? Well, at that point, they couldn't appeal anything. They would have had to wait until the they could have filed a answer on that, I'm sorry, a motion before the court to deny the proceedings based on anti-SLAPP. They didn't. You know, they did not. What do you take of the district court's declining to entertain a motion, an anti-SLAPP motion to the amended complaint? I mean, was the district court saying, in effect, the anti-SLAPP motion is denied for the same reasons that I denied it the last time? Or was he saying it's denied because the issue's on appeal and I shouldn't speak to it? Or what happens if the case goes back with regard to the amended complaint and the anti-SLAPP motion? I believe nothing happens on it because they did not appeal. They did not file a motion to dismiss based on the anti-SLAPP in the first amended complaint. By doing that, they lost their rights to do that. They had a certain amount of time to file that motion. If they had filed that motion, it would have been heard. We would have briefed it. We would have filed against it. Well, the district court didn't deny it based on it being untimely, at least not as I recall in what was read. But they denied anything because this case is on appeal. The first amended complaint was on appeal. See, part of what's hard here is the court's installed a pre-filing order because of everything that's happened in this litigation. And so I'm not entirely sure what the basis for being turned away is. And your sense is it's turned away because it was not an issue at that point. The case, in effect, is frozen because they appealed the first, the original complaint. So when it goes back, what would happen to the anti-SLAPP motion? It would be unfrozen? No, I think they waived their time for it. Well, I mean, if the judge says he won't entertain it, what else could they have done at that time until wait until the appeal is over? I guess perhaps then we come back here again. I guess if the court allowed it at that point, then we would file a response. One of the requests of the appellant, Mr. Cunningham, just now, was give direction to the district court that it's okay, now it's time to entertain that motion. And I now hear you saying you don't oppose that proposition. Well, I don't think this honorable court goes there. I mean, this is the, they're just trying to do anything they can to delay this case. No, an anti-SLAPP motion doesn't delay the case. It seeks to bring it to a head, albeit on precise grounds. Right, but this is the, they want a third bite at the apple. The first bite is they file an anti-SLAPP in the Eastern District Court of Pennsylvania, where the case was originally filed. And that's the Third Circuit denied that. So now the case is transferred here, and they file the anti-SLAPP. District Court denies it. They appeal that. So I think they've never set forth sufficient for the anti-SLAPP, because on the merits of the case. If we, in effect, dismiss the appeal on the ground that it's moot, they're not getting a hearing of it. They're still entitled to their hearing of it at some point. I can't deny that. I guess I can, Your Honor. I'm not going to tell you what to do on that. Well, people tell us what to do all the time. I don't, Your Honor. Next, if we move into the merits of the case. On the merits of the case, they lose. They're trying to claim political figures here. The main parties injured here is Lisa Liberi and Miss Estella. They're trying to claim they're public figures. They're not public figures. Lisa Liberi works for me as a paralegal. She's not a public figure. And even if she was, then I think on the three main parties here, including myself, if you want to say I'm a public figure because I ran for political office and things like that, then what do we look at next? We look at our position that everything these parties have done has been done with malice. And it's been done with malice because they've taken information here. And it's deplorable what Miss Tates has done and what Defend Our Freedoms have done. They decided they're going to get rid of me politically in a certain case. And they've decided, and there's testimony to that. And then to do that, they've gone and decided to get rid of me by taking down my paralegal. And they've taken this paralegal who was first given protective rights here in California because the father of her child was harassing and doing a lot of things. They even issued her a new Social Security number. The defendants here, they went and took her old Social Security number, new Social Security number, and everything else. Mother's maiden name, birthplace, dates, everything, and published it. That's definitely a violation of California statute and federal statute. Did they publish it one time? No. They've published it over, we're guessing, over a million times. Miss Tates keeps putting out her dossier number six, which has all this information on it. Well, now, are the merits of the case in front of us right now? What's in front of us? And you also mentioned the sanctions issue. I believe that was forwarded to this panel. I'm not sure that it's up for discussion at this time. But the issue there was that Miss Tates herself, and I believe through Mr. Cunningham, I could be wrong, but notified this court that I was disbarred, which was blatant. And as soon as your clerks received that, they took my name off the case, which I guess is proper if I'm disbarred. I wasn't disbarred. And that, to me, is a violation of my rights. There's a pending proceeding in Pennsylvania on disciplinary action against me, Your Honors. There was a recommendation. That recommendation we have appealed. There has been no decision by the appeal in Pennsylvania. But when the order came out, a recommendation was to spend for a year and a day. Miss Tates took that and put it all over the Internet and a letter or notice to this court. Then I was suspended. And my name was taken off the docket. Has there been issued an order to show cause why somebody shouldn't be sanctioned in connection with that? You say forwarded to this court. I'm completely in the dark on this. Somehow here the panel was given this information, supposedly, by the Ninth Circuit. The Ninth Circuit was looking into it. We raised that question with the Ninth Circuit. What's going on? We hadn't notified them that I'm not disbarred. Well, did you ask for sanctions? Did you make a motion for sanctions or something akin to that? I don't think we did. I think the panel itself, the – Do you have an order from a motions panel or something to that? No, something here in the Ninth Circuit. I mean, you keep saying something here in the Ninth Circuit. What, the error? What are you pointing to? I don't have it in front of me. You don't have it, period. I'm not sure exactly, but we were notified that that went wrong. Who notified you? How did they notify you? There were motions to strike briefs and so forth. And those motions included some requests for awards of attorney's fees. And all of that mess was referred to by a clerk's order to the merits panel. I don't recall anything about sanctions, but maybe attorney's fees is what you're referring to. Okay. I guess it's that merit panel. Well, we're the merits panel. So they've handed it to us. So in that sense, all of those motions, the ones that were never ruled upon or referred to the merits panel, are part of the package dumped on us. So if you have something to say to it, this is the right time to say it. But I don't recall any motion for sanctions. I don't either. Speaking specifically of sanctions as opposed to attorney's fees. But there were a lot of motions here. Well, if not, then it's before this panel for attorney fees and costs. And then if we still can, we would file a motion for sanctions because it was deplorable what these individuals did. And when they do it, they don't just write a letter to your court. They put it out on the Internet. They tell everyone. They have mistakes as a knack of putting everything out on the Internet and it keeps repeating and repeating and repeating. So, number one, I should be entitled to attorney fees, and number two, I will file a motion for sanctions because that's not what I want. I look at the other side. I've discovered the other side has filed a motion for sanctions. So, a word to everybody. The extra filings probably aren't helping your case. Okay. Well, as you said, I didn't file a motion. Don't open wars on other fronts. You've got enough going already. Absolutely. I didn't do that.  I mean, Ms. Tate. Counsel, I'm having trouble even entertaining this now because I don't see your motion for sanctions supported by an affidavit or some sort of a showing which pinpoints precisely what the misconduct was. So, this is highly irregular as far as I'm concerned to get into this right now. I will file what's happening. Unless you can point to something that's actually in the record, then we can talk. But if there's nothing in the record, there's not much to talk about. Same thing. It's not in the record like what they're trying to prove here is not in the record. On the basic case, I believe I will take care of that sanctions issue differently. But I really believe that the anti-SLAPP motion is moot. I think this court should rule on that. What happens when it goes back to the district court, if they want to have time for that and we'll appeal that, we'll file our response. And we might be back here to see Your Honors again on that issue, which is a total waste of the court's time. But I will follow what the court suggests. No, we're not supporting that. Or not, as the case may be. No, no, not today. Not today. I will follow whatever the court orders that come out from here and then also from the district court. I will follow those orders. Very well. Thank you. Thank you, Counsel. Mr. Cunningham, you've reserved some time. Yes, Your Honor. Let me try to address those points in as little time as possible. I believe that all requests for sanctions and related motions have already been resolved. What do you mean they've been resolved? They were resolved, I believe, by the merits panel. Were they withdrawn or were they acted upon? Guess who the merits panel is. Your Honors. And so you say we've resolved all of that? Resolved them in the sense of referring them to be resolved in connection with the appeal as a whole. But let me address. In other words, you are still maintaining that you filed a whole bunch of motions. They are now in front of us. What specifically do you want us to do with those motions? Your Honor, we did not file these various motions. You filed lots of motions. You filed the bulk of the motions. You filed a motion for 11 sanctions, the amount of $100,000 on May 3rd of last year. You filed motions for judicial notice, request to supplement the record. There have been lots of papers filed by lawyers on both sides, most of which don't do them well. Not by Ms. Tate's as a party, by Defend Our Freedoms, but the bulk of these. Then your colleague, indeed your client, has filed these motions. Who is an attorney and who represents another party? But let me address that one issue that Mr. Berg raised. We received an order which stated that Mr. Berg had been suspended from practice in his home state of Pennsylvania. We submitted that to this court, believing that it was a final order. Mr. Berg immediately complained about that and stated that it was not a final order, that he had appealed from it. We immediately submitted to this court a statement saying that we have investigated that and we were incorrect. Mr. Berg has not yet been suspended. And that is the gist of that. All right. We'll check the record on that, Counsel. Counsel, your time has expired. Your time has expired. Thank you. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Clifton